WESTCOTT CONSTRUCTION COMPANY *vs.* SAMUEL R. BARBER, *Town Treasurer of the Town of Charlestown.*

APRIL 29, 1955.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This action in assumpsit was brought against the defendant in his official capacity to recover the balance due under a completed contract in writing for the renovation of and addition to a school in the town of

Charlestown in this state. It was tried in the superior court before a justice thereof sitting with a jury and resulted in a verdict for the plaintiff in the sum of $10,058.10. The defendant's motion for a new trial was heard and denied. The case is here on his exceptions to that decision, to the denial of a motion for a directed verdict, and to certain rulings made during the trial.

The declaration sets forth the written contract and also the common counts. However, during the course of the trial plaintiff waived the common counts and relied wholly on the written contract. The gist of the basic issue is whether a certain letter relating to an extra charge for the excavation of ledge, if such work became necessary, was to be treated as part of the contract.

It is undisputed that a building committee, consisting of five members with James A. Whitman as chairman, was duly appointed and empowered to proceed with the construction specified in the contract here in question; that Frank B. Perry of the city of Providence, an experienced architect and engineer, was engaged by the committee to prepare plans for the proposed building, to draft contracts for the parties, and to supervise the construction work; and that, with the exception of the charge for ledge excavation, both the contractor and Perry had carried out their respective obligations to the satisfaction of the committee. If, in the circumstances that we are about to relate, such charge was to be treated as part of the contract, then defendant concedes that plaintiff would be entitled to $8,987.50 in addition to the $1,070.60 that was admittedly due under the contract. The verdict of $10,058.10 represents the total of those two sums.

The evidence on the determinative issues in the case was extensive, at times was not clear, and was replete with details which we need not refer to in this opinion. Perry usually met with the committee in Charlestown. What occurred at the meetings on the evenings of Saturday, Sep-

tember 9, and Monday, September 11, 1950, furnishes the original point of disagreement between the parties.

Perry, a witness for plaintiff, testified that when the bids for the work were opened on September 9 it was noted that all bids with the exception of the one from plaintiff contained an extra charge for excavation of ledge; that this omission was later attributed to oversight by the plaintiff; that after discussing plaintiff's bid as it then stood, the committee desired to make certain modifications in the terms thereof; and that Perry telephoned the suggested changes to Simeon Lavigne, president of the plaintiff company, and later reported to the committee that such changes were acceptable. Thereupon plaintiff was selected as the contractor.

On Monday, September 11, Perry asked plaintiff to submit to him two bids for reference to the committee at a meeting to be held on the evening of that same day, that is, the original bid with the changes requested by the committee and the other which concerned the charge for ledge excavation, if it became necessary. This the plaintiff did. The bid for the excavation, which is dated September 11 and is the only part of the contract in controversy, was as follows:

"For the excavation of all ledge encountered on the above named job we submit the following prices.

| Open Ledge | $15.00 per cu yd |
| Trench | $25.00 per cu yd" |

On its face there is a stamp which reads: "Received Sep 12 1950 Frank B. Perry Engineer & Architect By 9/22/50," the latter date being noted in pencil. Perry testified that he received the bid late in the afternoon of September 11 when he was about to leave for Charlestown and therefore did not stamp it as received on that date; that the following morning his secretary stamped it as above indicated; and that he did not change the date since he did not think it was incorrect. He explained that the pencil notation represented the day when he issued his purchase

order to the contractor to proceed with the excavation, which order shortly thereafter was filed with the committee.

Perry further testified that when he met the committee in Charlestown on the evening of September 11 he had with him the revised bid for the construction work, the bid for ledge excavation, and a general contract prepared by him which had been signed by plaintiff on that same day in Providence. While the typewritten portion of the contract made no specific reference to an extra charge for excavation of ledge, yet article 15 of the printed general conditions attached thereto and made a part thereof provided, among other things, that "no extra work or change shall be made unless in pursuance of a written order from the Owner signed or countersigned by the Architect, or a written order from the Architect stating that the Owner has authorized the extra work or change, and no claim for an addition to the contract sum shall be valid unless so ordered." It further provided that the value of any such extra work or change shall be determined: "(b) By unit prices named in the contract or subsequently agreed upon"; and that "Should conditions encountered below the surface of the ground be at variance with the conditions indicated by the drawings and specifications the contract sum shall be equitably adjusted upon claim by either party made within a reasonable time after the first observance of the conditions." The contract also provided for arbitration in case of dispute between the parties.

What happened when Perry met with the committee on September 11 is the subject of conflicting evidence. He testified in substance that he presented to them for their consideration the two above-mentioned bids, one of which was the contract signed by plaintiff and the other was for ledge excavation; and that after discussing the entire matter the committee signed the contract with full knowledge that the cost of ledge excavation, if undisclosed conditions made such work necessary, was to be in addition to the sum stipulated in the typewritten part of the contract.

On the other hand, James A. Whitman, chairman of the committee, testified that the excavation bid was not brought to their attention at that time; that when the contract was signed by the committee it was his understanding that the contract price covered whatever work was to be done on the job; and that, on or about October 2, he received by mail from the contractor a copy of the bid and a bill for the ledge excavation. William P. G. Barber was the only other member of the committee to testify. His testimony as to the circumstances under which the contract was signed was substantially the same as that of Whitman. There is no explanation in the record for the absence, as witnesses, of the remaining three committee members.

The conduct of the parties after September 11 is enlightening. It appears in evidence that ledge was encountered and notice thereof was given to Whitman about the middle of that month; that he went to the site with the architect; and that after observing the condition then appearing he ordered the work of excavating the ledge to proceed as he wanted no delay in the erection of the school building. This was admitted by Whitman who further testified that, when he received the bill for such work on or about October 2, he and one Prosser took it "upon ourselves" to obtain legal advice, the result of which was that no protest against that charge was made by or for the committee. In the aforesaid bill, dated September 30, 1950, the following items were included:

"460 cu yds of open ledge   @ $15.00 cu yd 6,900 00
83½ cu yds of trench ledge @ $25.00 cu yd 2,087 50

    Total         8,987 50"

Since the contract allowed the committee to retain 10 per cent of all charges for work done in a given month, the amount then due for excavation was $8,088.75, which sum plaintiff carried as a debit in its invoice for October.

The nonpayment of that item led to a conference, the object of which was again the subject of conflicting evidence.

The plaintiff testified that it demanded payment of the bill for ledge excavation, while defendant claimed that plaintiff requested an advance of some money on the general contract. At any rate on November 12 the committee authorized the issuance of a check for $6,000 payable to plaintiff. There was no notation thereon or communication in connection therewith indicating why it was issued. At that time the only amount due to plaintiff, if any, was the charge for ledge excavation.

On receipt of that check, plaintiff applied the money in part payment of the excavation bill. Every one of the invoices from November 1950 to August 1951, both inclusive, thereafter received from the contractor and acted upon by the committee, showed the $6,000 plainly credited in the running account between the parties as a payment for extra work under the contract. Notwithstanding such knowledge, the committee at no time took any action to dispute the original charge for ledge excavation nor did they challenge in any way the credit therefor as shown by the invoices.

The school building was completed to the satisfaction of the committee early in September 1951. The defendant admits owing plaintiff $1,070.60, but he denies liability for the ledge excavation on the ground that such work was either included in the contract price or that it was done without authority from the committee. He contends that the orders from the architect with reference thereto were self-serving in the circumstances and not binding on the committee.

The issue in this case was essentially one of fact, the determination of which rested on conflicting evidence. The defendant's exception numbered 28 relates to the denial of his motion for a directed verdict. Briefly stated, our well-settled rule is that unless the evidence submits to but one reasonable conclusion a motion for a directed verdict should be denied. Further, on such a motion the weight of the evidence and the credibility of the witnesses are not for the

trial justice to consider but are for later determination by the jury. The evidence of record, when considered in the light of the surrounding circumstances together with the credibility of the witnesses, could reasonably lead to different and opposite conclusions. In the instant case therefore the trial justice did not err in following the foregoing rule. This exception is overruled.

We will now consider defendant's exceptions to the admission of certain evidence. Exception numbered 1 relates to a written purchase order from the architect to the contractor stating in effect that the owner had authorized the removal of ledge as an extra under the contract. That order, dated September 22, 1950, and signed: "Frank B. Perry By Frank B. Perry Acting for, and with the authority of the Purchaser," was in accordance with the provision in the contract that no extra work or change shall be made unless in pursuance of a written order from the owner signed or countersigned by the architect "or a written order from the Architect stating that the Owner has authorized the extra work or change * * *."

In the circumstances the order was competent evidence as it had a direct bearing on the basic issue of fact in dispute. The same may be said with reference to defendant's exceptions numbered 2 to 13, both inclusive, which relate to the original bill of September 30, 1950 for ledge excavation and to the monthly invoices thereafter received by the committee in the form hereinbefore mentioned, to each of which invoices there was attached a certificate signed by the architect approving payment of the balance then appearing to be due. Exception 25, which relates to plaintiff's letter offering to arbitrate the matter of the ledge excavation in accordance with the contract, is also without merit for the reason herein stated. These exceptions are overruled.

The defendant also excepted to certain statements which the trial justice made in the charge concerning the evidence. He contends that such statements amounted to a direction of verdict. We do not agree with this contention. Our

examination of the charge as a whole shows that the trial justice fairly set forth the evidence for both sides. The defendant's contention is without merit and therefore these exceptions are overruled.

In arguing the exception to the denial of the motion for a new trial defendant, disregarding all evidence to the contrary, deals with the various factual situations in dispute as if the evidence in his favor were practically undisputed, and therefore he concludes that the verdict for plaintiff was unwarranted. The jury found otherwise and the trial justice, after his independent consideration of the conflicting evidence, the reasonable inferences to be drawn therefrom, and the credibility of the witnesses, sustained the jury's verdict. From a review of the evidence we are of the opinion that in so deciding the trial justice followed the correct rule governing a motion for a new trial. Since we cannot say that his decision on conflicting evidence was clearly wrong, this exception is overruled.

All exceptions which have been briefed or argued and not herein mentioned have been considered and found to be without merit, and those not briefed or argued are deemed to be waived.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*George Roche, Eugene J. Laferriere,* for plaintiff.

*James O. Watts,* for defendant.